# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| KEITHLAND WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-cv-49 SNLJ |
| ) | |
| COATINGS AND SYSTEMS ) | |
| INTEGRATION, LTD., et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' joint motion for summary judgment (#25). The motion has been fully briefed and is now ripe for disposition.

I.  Background

On September 13, 2011, plaintiff Keithland Welch was injured when his right hand became caught in a putty conveyor system while he was working at HAVCO Wood Products ("HAVCO"). Four of plaintiff's fingers were partially amputated as a result. Plaintiff filed this lawsuit against Coatings and Systems Integration, Ltd. ("CASI"), Coating Application Specialists, Inc. ("C&S"), and Cole Oehler,[1] alleging that one or more of the defendants had designed, manufactured, caused to be assembled, and fabricated the putty conveyor system in question. Plaintiff claims that the defendants are liable under strict liability and negligence theories for his injuries.

---

[1] Plaintiff also named One Finale, Ltd. as a defendant. Plaintiff moved to voluntarily dismiss that defendant on November 1, 2012 (#30), and that motion will be granted.

Defendant Cole Oehler incorporated at least four Illinois corporate entities between 1996 and 2007:

1. ELOC Services, Inc. ("ELOC"), which was incorporated on April 24, 1996 and dissolved on January 27, 2004.

2. Applied Coatings, Inc. ("Applied Coatings"), which was incorporated on December 14, 1996 and dissolved on January 27, 2004.

3. Defendant C&S, which was incorporated on February 11, 2002 and dissolved on June 21, 2011.

4. Defendant CASI, which was incorporated January 10, 2007 and which remains a corporation in good standing in Illinois.

The putty machine was installed at HAVCO's plant in approximately 1998 or 1999. Defendants argue that ELOC designed and built the putty system for HAVCO. Institutional memory at HAVCO regarding the origin of the putty system is not conclusive, however, and plaintiff submits an affidavit of former HAVCO employee Jeff Miller stating that HAVCO acquired the putty system from CASI.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving

2

party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

Plaintiff has asserted claims for strict liability and negligent supply of a dangerous instrumentality against each defendant. To assert a claim for strict liability, the plaintiff must prove that the defendant supplied the product in the course of the defendant's business. *See* § 537.760 R.S.Mo. To assert a claim for negligent supply of a dangerous product, the plaintiff must similarly prove that the defendant supplied the product for use. *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682-83 (Mo. Ct. App. 2002) (citing MAI 25.10(B) (5th Ed.)). Here, defendants insist they are entitled to summary judgment because, they say, they did not furnish the putty machine that caused plaintiff's injury.

Defendant Oehler testified that his now-dissolved company ELOC furnished the putty machine to HAVCO. It is undisputed that the putty machine was installed in 1999, that defendant CASI was created in 2007, and that defendant C&S was incorporated in 2002, so, Oehler insists, the defendants had nothing to do with the putty system. Thus, defendants maintain, they should be granted summary judgment.

Plaintiff argues that summary judgment is inappropriate for three reasons: First, plaintiff responds that there is a question of fact as to whether ELOC was responsible for supplying the putty machine. Plaintiff also contends that, even if ELOC did supply the putty machine, CASI is liable now as a successor-in-interest of ELOC and C&S. In the alternative, plaintiff argues that defendant Oehler is personally liable for the putty machine.

A. **Which entity supplied the putty machine?**

Plaintiff contends that there is a question of fact as to whether ELOC was responsible for supplying the putty machine because a former HAVCO employee, Jeff Miller, supplied an affidavit which states that he was charged with finding someone to build the putty machine, and that he contracted for the putty machine with CASI. Plaintiff devotes little time to this statement. Defendants respond that the statement is "blatantly false" because CASI did not exist until 2007, which was 8 years after the putty machine was installed.[2] It is unclear just how plaintiff can support his contention that Jeff Miller's affidavit is correct given that plaintiff's own statement of facts includes that CASI was incorporated in 2007.

Aside from HAVCO's uncertain institutional memory, a question of fact does exist for the jury to resolve. Although CASI and C&S could not have supplied the putty machine (because the parties agree they did not exist when the machine was installed in 1999), the jury

---

[2]Defendants point out that this is the second time plaintiff has attempted to rely on HAVCO employee statements that were later proven false: HAVCO employee Jill Braswell stated in her affidavit (attached to plaintiff's opposition to CASI's motion to dismiss) that the putty machine was acquired by HAVCO through CASI. During Ms. Braswell's deposition, however, she admitted that she had never heard of CASI or C&S, that she was not sure whether HAVCO obtained the putty machine from CASI, and that she did not know the name of the company that built the putty machine.

might determine that either ELOC or, as will be discussed further below, Oehler personally was responsible for the putty machine.

**B.     Successor Liability of CASI and C&S**

Plaintiff's next argument is that — even if ELOC did supply the putty machine to HAVCO — CASI and C&S are liable for it now. A successor corporation is generally not liable for the debts or liabilities of its predecessor; however, there are exceptions to that general rule. *Chemical Design, Inc. v. American Standards, Inc.*, 847 S.W.2d 488, 491 (Mo. Ct. App. 1993). In Missouri, successor liability occurs in four situations: (1) when there is an express or implied agreement to assume the debts and liabilities; (2) when the transaction amounts to a consolidation or merger of the corporation; (3) when the purchaser is merely a continuation of the selling corporation; and (4) when the transaction is entered into fraudulently in order to escape liability for the debts and liabilities. *Id.*   Plaintiff contends that situations (2) and (3) exist here.

First, plaintiff suggests that CASI is a mere continuation of ELOC and C&S. In determining whether there is such a continuation, the court considers several factors:

> (1) Whether there is common identity of officers, directors and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors and name of the transferor; and (5) whether notice has been given of the transfer to employees or customers.

*Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003). "Although none of these factors are determinative in the mere continuation analysis, the first factor — common identity of officers, directors, and stockholders — is a 'key' factor." *Gorsuch v. Formtek Metal Forming, Inc.*, 803 F. Supp. 2d 1016, 1022 (E.D. Mo. 2011) (citing *Helms v.*

*Prime Tanning Corp.*, 2010 WL 1935952, *10 (W.D.Mo. May 11, 2010) and *Flotte v. United Claims, Inc.*, 657 S.W.2d 387 (Mo. Ct. App. 1983)).

It is undisputed that defendant Oehler incorporated ELOC, C&S, and CASI. Oehler was also the sole stockholder and president of all three entities. Oehler was also ELOC's only employee. C&S and CASI were incorporated separately only because, when Oehler wanted to change C&S's name to CASI, the state of Illinois required him to re-incorporate. Although defendants insist that ELOC and C&S were in different businesses, Oehler conceded that there were similarities between the businesses. Oehler further testified that ELOC and CASI both served the same niche of supplying parts to the transportation industry. Critically, CASI's website includes as a "significant completed project" the very putty machine that caused plaintiff's injury — despite the fact that defendants state that ELOC, and not CASI, was responsible for that machine. That CASI now claims credit for the machine that ELOC (allegedly) built provides strong support for plaintiff's argument that their business is indeed the same.

Other factors going to whether the nature of the businesses are the same are whether the assets and business were transferred to the successor corporation, whether property interests were transferred, whether the businesses operated in the same location with the same phone number, whether the businesses had the same customers, and whether the successor acquired the goodwill of the predecessor business. *Med. Shoppe Int'l, Inc.,* 336 F.3d at 804. Here, Oehler testified that his companies' only real assets were the designs and Oehler's "know how," which he carried with him from one company to the next. Oehler testified that the few tools he used in the businesses were his personal tools (and those tools were used throughout the businesses). It is undisputed that C&S and CASI shared the same address and phone number, but ELOC's records

6

were destroyed by Oehler, and Oehler could not remember its phone number. Finally, Oehler admitted that the businesses shared vendors and customers and that the goodwill he developed carried over to the later businesses.

Second, and similarly, plaintiff argues that the facts support that a "*de facto* merger" occurred. To find a *de facto* merger, the following factors are considered: (1) the continuity of the business enterprise, (2) the continuity of shareholders, (3) whether the selling company ceases operations and/or dissolves, and (4) whether the buyer assumes liabilities and obligations necessary for the continuous operation of the business. *Harashe v. Flintkote Co.*, 848 S.W.2d 506 (Mo. Ct. App. 1993) (citing 15 *Fletcher Cyc. Corp.* § 7124.20). It is not necessary to find all of those elements to find a *de facto* merger. *Id.* Defendants argue that the *de facto* merger analysis is inapplicable because there was never a sale of assets or any other transaction between ELOC and C&S/CASI.

Ultimately, the "mere continuation" and "*de facto* merger" analyses are overlapping. Although typically both analyses are made following a situation involving a seller and a purchaser, the usual framework does not apply here, where there is only one natural person incorporating and dissolving entities and running the business. Defendants insist that CASI, C&S, and ELOC were different, but the businesses are certainly similar — and so similar that CASI claims ELOC's putty machine as its own. Defendants note that CASI expanded its sales territory beyond that of ELOC, but such an expansion could be expected over the course of 10 years in business. And defendants insist that neither CASI nor C&S has ever been in the business of selling putty machines, but, again, CASI's own website advertises the putty machine as its own accomplishment. Defendants gloss over the fact of the putty machine on CASI's website by stating simply that neither CASI nor C&S ever sold one, and that CASI is engaged in

selling different machinery now. But that argument does not explain away the fact that defendant CASI publicly claims credit for and advertises its abilities related to the putty machine at issue in this case. There is at least a question of fact, then, as to whether CASI is a continuation of and thus liable for the acts of ELOC and C&S.

### C. Personal liability of defendant Cole Oehler

Plaintiff argues, finally, that defendant Oehler himself is personally liable for the injury caused by the putty machine because he stated in his deposition that the putty machine was among "accomplishments of Cole, not of that corporation." Plaintiff thus claims that he does not need to pierce the corporate veil to hold Oehler personally liable because Oehler admits he was personally responsible for the machine.

Defendants argue that Oehler's statement is not one of personal responsibility because they say there is no evidence that defendant Oehler waived the limited liability protections afforded to him while ELOC was in existence.

Although Oehler testified that putty machine was manufacturerd by and sold by ELOC, he also testified that it was his "accomplishment," as if he were operating independently of his corporations. This presents a fact question to be resolved by the jury.

**IV. Conclusion**

Plaintiff has shown that disputed issues of fact exist as to whether defendants are liable for the putty machine that caused plaintiff's injury. Summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#25) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss defendant One Finale (#30) is **GRANTED.**

Dated this  11th  day of March, 2013.

                                                  STEPHEN N. LIMBAUGH, Jr.
                                                  UNITED STATES DISTRICT JUDGE